TOWN OF NEWTON GROVE v. SUTTON

[111 N.C. App. 376 (1993)]

THE TOWN OF NEWTON GROVE, Plaintiff v. McCOY SUTTON, BLONDIE
J. SUTTON, and BECKY BARFIELD, Defendants

No. 914SC1039

(Filed 3 August 1993)

1. **Municipal Corporations §§ 30.12, 30.19 (NCI3d) — zoning ordinances — mobile home not allowed in central business district**

The trial court did not err in finding that plaintiff's ordinances prohibited defendants from placing a mobile home for their mentally ill daughter on their property, which was zoned C-1, central business district, where defendants' house was a nonconforming use; the ordinance prohibited enlargement or extension of nonconforming uses; placing the mobile home on defendants' property would extend their nonconforming residential use; and the mobile home was not a "customary accessory" structure to their residence. Furthermore, there was no merit to defendants' contention that plaintiff's Board of Adjustment should have granted them a variance to place the mobile home on their property based on the Board's authority to authorize variances on appeal in certain cases in order to "strike a fair balance between the City and the rights of the property owner," since, in order for the Board to grant a variance, the property owner must first file an appeal with plaintiff's zoning administrator, and defendants failed to file such an appeal.

**Am Jur 2d, Mobile Homes, Trailer Parks, and Tourist Camps §§ 13, 14.**

**Use of trailer or similar structure for residence purposes as within limitation of restrictive covenant, zoning provision, or building regulation. 96 ALR2d 232.**

2. **Handicapped Persons § 5 (NCI4th) — Fair Housing Act — practice not discriminatory "because of" handicapping condition — Act inapplicable**

In this proceeding for an injunction prohibiting defendants from locating a mobile home for their mentally ill daughter on their property which was zoned central business district, the North Carolina Fair Housing Act did not apply, since defendants failed to meet one of the threshold requirements of the Act — that the discriminatory housing practice discrim-

TOWN OF NEWTON GROVE v. SUTTON

[111 N.C. App. 376 (1993)]

inated "because of" the daughter's "handicapping condition" — as plaintiff prohibited defendants from placing the mobile home on the property in order to enforce its ordinances and to maintain the nonresidential, business scheme of the C-1 district, not "because of" the daughter's physical or mental condition. N.C.G.S. §§ 41A-4(a), 41A-5.

**Am Jur 2d, Mobile Homes, Trailer Parks, and Tourist Camps §§ 13, 14.**

**Use of trailer or similar structure for residence purposes as within limitation of restrictive covenant, zoning provision, or building regulation. 96 ALR2d 232.**

Appeal by defendants from order signed 12 June 1991 and filed 14 June 1991 by Judge Henry L. Stevens, III in Sampson County Superior Court. Heard in the Court of Appeals 15 October 1992.

In 1988, defendants requested plaintiff's permission to locate a mobile home behind defendants McCoy and Blondie Sutton's (the "Suttons") residence on the Sutton's property located in the area zoned C-1, Central Business District in the Town of Newton Grove. This mobile home is owned by defendants McCoy Sutton and his daughter, Becky Barfield. Defendants wanted to place this mobile home on their property as Barfield's residence because Barfield has a severe mental illness. After a public hearing, plaintiff's Town Council voted to deny defendants' request.

Subsequently, in a letter dated 13 October 1989, defendants wrote plaintiff's mayor and informed him of their belief that the newly enacted 1989 Federal Fair Housing Act would apply to their situation so that the zoning requirements could be set aside to allow them to place a mobile home on their property. Additionally, they informed plaintiff of their intention to locate a mobile home on their lot on 30 October 1989 if they did not hear from plaintiff.

On 28 October 1989, plaintiff Town of Newton Grove filed a complaint and motion for injunction against defendants alleging that plaintiff's zoning ordinances do not permit mobile homes in the district zoned C-1 and that defendants had violated these ordinances by placing a mobile home on their property located in the C-1 district. Based on these allegations, plaintiff asked the court to issue a temporary and permanent injunction prohibiting

and enjoining the defendants from locating the mobile home, or any mobile home on their property.

On 29 December 1989, defendants filed an answer to this complaint and a counterclaim. In their answer, defendants neither admitted nor denied plaintiff's allegation that plaintiff's zoning ordinances do not permit mobile homes in the C-1 district and neither admitted nor denied the allegation that their mobile home violates the zoning ordinances because of this prohibition. Instead, defendants pointed out that plaintiff had prohibited them from placing the mobile home on their property before the enactment of state and federal laws "protecting the rights of persons with disabilities to have reasonable accommodations made to policies to meet their individual needs and afford them the opportunity to reside in their communities."

In their counterclaim, defendants alleged that defendant Barfield is protected by the Federal Fair Housing Amendments of 1988 and the North Carolina Fair Housing Amendments enacted in 1989 as a person with severe and persistent mental illness and essentially that defendants should be allowed to place the mobile home on their property as Barfield's residence because Barfield is protected under these laws. Additionally, defendants alleged that the continued refusal of plaintiff to allow defendants to place a mobile home on their property in which Barfield could reside is based upon prejudices of citizens of the Town of Newton Grove against persons with mental illnesses. Based on these allegations, defendants asked the court to deny plaintiff's motion for an injunction and to order plaintiff to issue a permit to locate the mobile home on their property.

On 20 February 1991, plaintiff and defendants agreed to and filed stipulations in this action. On 12 June 1991, Judge Henry L. Stevens, III signed an order based on these stipulations prohibiting and enjoining defendants from locating a mobile home on their property. From this order, defendants appeal.

*Robert S. Griffith II for plaintiff-appellee.*

*Governor's Advocacy Council for Persons With Disabilities, by Judy J. Burke and Augustus B. Elkins, II, for defendant-appellants.*

*Amicus Curiae Brief filed by Daniel D. Addison for the North Carolina Human Relations Commission.*

**TOWN OF NEWTON GROVE v. SUTTON**

[111 N.C. App. 376 (1993)]

ORR, Judge.

The parties have stipulated that the Suttons own property in the Town of Newton Grove zoned as C-1 Central Business District under the applicable zoning ordinances which plaintiff properly enacted on or about March 1977. Additionally, the parties stipulated that before the enactment of these ordinances, the Suttons used their property for residential purposes, such being the use of the property at that time. After the zoning ordinances were enacted, the district where the Sutton residence was located was zoned as C-1, for business use. It is undisputed that the Sutton residence that was on the property prior to the enactment of the ordinances is now permitted in the C-1 district as a "nonconforming use" under the ordinances.

Additionally, the parties have stipulated that defendants have previously requested permission from plaintiff to locate a mobile home on the Sutton property and that plaintiff denied this request. Further, the parties stipulated that defendant Barfield has been classified as disabled by the Department of Health and Human Services, Social Security Administration and is receiving Social Security Disability benefits.

Based on these stipulations, the trial court found as fact that "the zoning ordinances of the Plaintiff do not permit the location of a mobile home within an area zoned C-1" and the additional findings of fact:

1. That the placement of a mobile home upon the property of the Defendants is not a real estate transaction as defined by NCGS 41A-4 et seq.

2. That even if the Defendant, Becky Barfield, is a member of the class sought to be protected by NCGS 41A-4 et seq., such statutes do not require that the Plaintiff not enforce its zoning ordinances with respect to such an individual.

Based on these findings of fact, the trial court enjoined defendants from placing their mobile home or any mobile home on their property.

On appeal, defendants bring forward three assignments of error: (1) that the trial court erred in finding that plaintiff's ordinance does not permit mobile homes in the C-1 zoned district, (2) that the trial court erred in concluding that the placement of the mobile home on their property was not a "real estate transaction" under

N.C. Gen. Stat. § 41A-4 et seq., and (3) that the trial court erred in concluding that even if Becky Barfield is in the protected class of G.S. § 41A-4 et seq., "such statutes do not require that the Plaintiff not enforce its zoning ordinances with respect to such an individual." For the reasons stated below, we find no error, and accordingly, we affirm the order of the trial court.

I.

[1] First, defendants argue that the trial court erred in finding that plaintiff's ordinances prohibit defendants from placing the mobile home on the Sutton property. We find no error.

The parties have stipulated that the Sutton property was subject to plaintiff's zoning ordinances at all times relevant to this action and that this property is zoned C-1, Central Business District. Under this section of the ordinances, the stated intent of this zoned area is "to accommodate those retail and office uses which are characteristic of the major business centers of town", and accordingly, the "Permitted Uses" and "Conditional Uses" allowed under this section are all related to business establishments. The parties do not dispute that the Sutton residence is allowed in the C-1 district as a "nonconforming use".

Article V of the ordinances defines "nonconforming uses":

After the effective date of this ordinance, pre-existing lots or structures, or uses of lots or structures which are prohibited under the regulations for the district [in] which [the lot, structure, or use is] located, shall be considered as nonconforming. Nonconforming lots, structures or uses may be continued, provided they conform to the following provisions.

One of the provisions under Article V states, "[n]onconforming portions of structures and nonconforming uses of structures or land shall not be enlarged or extended."

Defendants do not dispute that placing their mobile home on their property would be an extension of the nonconforming use; instead, they argue that they are entitled to place this mobile home on their property because it is a "customary accessory" use or structure under Article VI, Section 6.4. We disagree.

Under Article VI, Section 6.4(b), the "Permitted Uses" section of the C-1 district, "Customary accessory uses and structures" are

allowed. Subsequently, defendants argue that since their residence is allowed as a nonconforming use under Article V of the ordinance, the mobile home is allowed under Article VI, Section 6.4 as an accessory structure to their residence.

Defendants' residence is permitted under Article V as a nonconforming use, and Article V plainly prohibits defendants from extending or enlarging this nonconforming use. Placing the mobile home on the Sutton property would extend their nonconforming residential use. We decline to apply Article VI, Section 6.4 to defendants' situation to allow them to place their mobile home on the Sutton property as an accessory structure. To do so would directly contradict the article that specifically applies to defendants' residence, Article V. Additionally, in light of the intent of Article VI, Section 6.4, to "accommodate those retail and office uses which are characteristic of the major business centers of the town", we do not think that Article VI, Section 6.4 overrides Article V to allow defendants to extend the nonconforming *residential* use of their property.

Defendants also argue, however, that plaintiff's Board of Adjustment should have granted them a variance to place the mobile home on their property based on the Board's authority to authorize variances on appeal in certain cases in order to "strike a fair balance between the City and the rights of the property owner." Under Article XI, Section 11.1 of the zoning ordinances, plaintiff's Board of Adjustment has the power to authorize on appeal "such variances from the terms of the Ordinance as will not be contrary to the public interest" upon a finding after a public hearing that certain conditions exist. In order for the Board to grant a variance, however, the property owner must first file an appeal with plaintiff's Zoning Administrator. Article XI, Section 11.2 of the zoning ordinances states, "Appeals from the enforcement and interpretation of this Ordinance and requests for variances, shall be filed with the Zoning Administrator specifying the grounds thereof. The Zoning Administrator shall transmit to the Board of Adjustment all applications and records pertaining to such appeals and variances."

The record before us is void of any evidence that defendants filed an appeal or a request for a variance with the Zoning Administrator; thus, this section of the ordinances is not applicable to the present case, and defendants' first assignment of error is without merit.

## II.

[2]   Defendants' next two assignments of error deal with arguments under the North Carolina Fair Housing Act. Before we can address defendants' specific assignments of error, we must determine whether the Act is applicable to the facts of this case.

N.C. Gen. Stat. § 41A-4(a) (1990) of the North Carolina Fair Housing Act states:

> It is an unlawful discriminatory housing practice for any person in a *real estate transaction, because of* race, color, religion, sex, national origin, handicapping condition, or familial status to:
>
> . . .
>
> > (2b) Refuse to make reasonable accommodations in rules, policies, practices, or services, when these accommodations may be necessary to a handicapped person's equal use and enjoyment of a dwelling;
> >
> > . . .
> >
> > (8) Otherwise make unavailable or deny housing.

(Emphasis added.)

Thus, in order for the Act to apply, the discriminatory housing practice must first: (1) occur in a "real estate transaction", and (2) discriminate "because of" one of the reasons listed in the statute, in this case "because of" Barfield's "handicapping condition". We conclude that defendants have failed to meet the threshold question of showing that plaintiff did not allow defendants to place a mobile home on the Sutton property "because of" Barfield's handicapping condition.

There is uncontroverted evidence in the record that plaintiff prohibited defendants from placing their mobile home on the Sutton property in order to enforce its ordinances and to maintain the nonresidential, business scheme of the C-1 district. Prohibiting mobile homes for residential purposes in the C-1 district is in keeping with the intent of the zoning ordinances for this district to "accommodate those retail and office uses which are characteristic of the major business centers of the town." The C-1 district is not a residentially zoned area, and there is no evidence that other persons in this district have been permitted to place mobile homes on their property. Plaintiff's ordinances do provide specifically for

mobile homes in the residentially zoned area under the R-A Residential-Agricultural District.

Even though we recognize that a person can prove that an act is discriminatory under the State Fair Housing Act, regardless of intent, by showing the act had a discriminatory effect under N.C. Gen. Stat. § 41A-5, defendants have also failed to prove the existence of a discriminatory effect in this case. Plaintiff's enforcement of its ordinances prohibiting mobile homes applies to all of the property owners located in the area zoned C-1. The effect of this enforcement is that no persons in this area have mobile homes on their property, no matter if they have a handicapping condition or not.

Thus, the evidence in the record before us shows that plaintiff prohibited defendants from placing a mobile home on the Sutton property in order to maintain the spirit and purpose behind the zoning ordinances and not "because of" Barfield's handicapping condition. The effect of this act was to maintain the business nature of the area zoned C-1, and plaintiff refused to allow Barfield to place a mobile home on the property based on a classification of housing type and not on Barfield's physical or mental condition.

Thus, defendants have failed to meet one of the threshold requirements of the State Fair Housing Act, and the Act is not, therefore, applicable to this case. Because we have held that the Act does not apply, we need not address defendants' specific assignments of error and related arguments that concern certain provisions of the Act.

Accordingly, we affirm the order of the trial court enjoining defendants from placing a mobile home on their property in the C-1 district.

Affirmed.

Judges EAGLES and JOHN concur.